IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tony Jackson, #15996-051, ) | |
| ) | CIVIL ACTION NO. 9:09-1797-HFF-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Harley G. Lappin, Director of Bureau ) | **REPORT AND RECOMMENDATION** |
| of Prisons; M. L. Rivera, Warden of ) | |
| FCI Estill, in official capacities, ) | |
| CDR Bradley; MLP Garcia; ) | |
| Dr. Zoltan Vendel and Dr. R. Majaukas, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff, an inmate with the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on November 9, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 10, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff responded by filing his own motion for summary judgment on December 21,

- 1 -



2009, to which the Defendants filed a memorandum in opposition on January 7, 2010. Plaintiff then filed a "Declaration" on January 19, 2010, as well as a reply to the Defendants' opposition memorandum on March 8, 2010, to which the Defendants filed a sur-reply on March 18, 2010.

These motions are now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on December 18, 2008 he was seen by neurologist "Dr. Alhotou", who prescribed him Neurotin and Flexeril. However, Plaintiff alleges that the "region" denied him this medication, so the Defendant "Dr. Majauskeas" of FCI Estill recommended either Ellaville or Topiramate. Plaintiff alleges that he choose Topiramate because he believed Ellaville to be an antidepressant, but that a couple of weeks after taking the medication he put in a sick call slip and explained to the physician's assistant (PA) that the amount of medication he was taking "twice a day" was too much. Plaintiff alleges that he was beginning to get dizzy and suffering shortness of breath.

Plaintiff alleges that he never got a chance to see if the medication originally prescribed to him by Dr. Alhotou would have been any help to him. Plaintiff further alleges that the "neurologist" wanted to see Plaintiff back in his office in two months to start another procedure if

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



the medication he prescribed was not working. Plaintiff alleges that the medication Topiramate is not the medication he needs, but that the response he received from a request he sent to the central office was that he was receiving adequate treatment for his back pain condition. Plaintiff also alleges he was recommended to see a spine specialist by an orthopedic surgeon, but that the medical department at FCI Estill has not attempted to send him to see a spine specialist, nor did they keep Plaintiff's appointment with the neurologist for his evaluation to see if the medication was working. Plaintiff further alleges that, although the medical department has given him medications to ease his pain, his problem is still existing. Plaintiff alleges that he needs surgery to be performed, and that FCI Estill's medical department is being deliberately indifferent to his medical needs. Plaintiff seeks monetary damages.

Plaintiff has attached to his complaint copies of numerous documents, including an informal resolution form dated April 24, 2008, another informal resolution documentation form dated August 5, 2008, a request for administrative remedy form dated September 9, 2008, with response dated September 29, 2008, appeal documents with a response dated December 18, 2008, and a second appeal response dated April 9, 2009. Plaintiff has also submitted a record of an office visit to Coastal Plains Physician Associates dated August 18, 2008, indicating that Plaintiff has a disc extrusion at L5-S1 as well as an annular fissure at L4-L5. This document indicates that Plaintiff was seen by Dr. Jeffrey Garske, who recommended epidural steroids. However, Plaintiff did not want any steroids, with Dr. Garske then stating that "[w]ith this in mind, I have limited options to offer him and arrangements will be made for referral for spine surgeon for possible surgical intervention which he is more in favor of."

Plaintiff has also submitted a report from Dr. Mohammed Alhatou dated December



18, 2008, who on examination found that Plaintiff had 5/5 strength in both his upper and lower extremities with normal coordination, normal gait and normal station. Dr. Alhatou stated that he was going to try Neurotin and Flexeril, and if that did not help, he was planning to do a steroid epidural injection. However, Plaintiff objected to receiving steroids, stating that he had a rash when he was given oral steroids. Dr. Alhatou then opined that, if conservative measures did not work, surgical intervention would be considered. Finally, Plaintiff has submitted a copy of an MRI performed June 2, 2008, and what appears to be a computer printout discussing the medication Topiramate. See Plaintiff's Verified Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendant Regina Bradley has submitted an affidavit wherein she attests that she is the Assistant Health Services Administrator (AHSA) at FCI Estill, and is also a registered nurse. Bradley attests that she is not personally familiar with the Plaintiff, who was an inmate at FCI Estill from May 8, 2007 until May 12, 2009. Bradley attests that, according to Plaintiff's medical records, she saw the Plaintiff on May 8, 2007 when he first arrived at FCI Estill for intake screening, and that based on the medical records available at that time, Plaintiff was diagnosed with hypertension, dyspepsia, and migraine headaches. Plaintiff was given medications for these diagnoses. See Court Document No. 27-3, p. 5. Bradley further attests that, during the intake screening process, Plaintiff completed a Health Intake Assessment/History Form. Plaintiff did not indicate on this form that he had back problems, nor did he indicate he suffered from any painful condition. Bradley attests that she also completed a Health Intake Assessment form, in which she noted that Plaintiff stated that he suffered from pain in his right knee and from migraine headaches. Plaintiff did not mention he had back problems during this medical screening.



Bradley attests that, as the AHSA, she did not act in the capacity of a medical provider while Plaintiff was housed at FCI Estill, although she might have responded to an Inmate Request to Staff Member from the Plaintiff or address his inquires at "mainline". Bradley attests that if Plaintiff had made any complaints to her concerning his back, she would have informed him to sign up for sick call, because his medical problems would need to be addressed by his primary care provider. See generally, Bradley Affidavit.

The Defendant Z. R. Vendel has also provided an affidavit wherein he attests that he is a physician and was employed as the Clinical Director at FCI Estill until October 2008, when he retired. Dr. Vendel attests that he treated the Plaintiff while he was housed at FCI Estill, that Plaintiff arrived at FCI Estill on May 8, 2007, and that he first saw the Plaintiff on May 22, 2007, when he conducted a physical examination. Dr. Vendel attests that, during this examination, Plaintiff did not indicate he was suffering from back problems, nor was there any documentation in Plaintiff's medical records to indicate that he suffered from back problems. Dr. Vendel attests that Plaintiff first complained to medical staff at FCI Estell of pain associated with his back on December 17, 2007, following which he [Dr. Vendel] did a comprehensive evaluation which revealed tenderness around Plaintiff's lumbar area. Dr. Vendel attests that he diagnosed Plaintiff with sciatica secondary to acute disc disease, gave him a medical convalescence for a month, approved him for early meals for a month, gave him a wheelchair for a week, gave him a sports restriction for four months, and gave him pain medication. Dr. Vendel attests that he also ordered an x-ray of Plaintiff lumbar spine, which was subsequently taken with negative results. Dr. Vendel instructed Plaintiff to return to the clinic if his symptoms persisted.

Plaintiff thereafter reported to sick call again on January 3, 2008, requesting



medication for his back pain. Dr. Vendel attests that Plaintiff's medical records show that he was evaluated by a mid-level practitioner (MLP), with the evaluation revealing no gross deformities, atrophy, numbness, or swelling. Plaintiff was assessed with lumbago (low back pain) and given Feldene (a nonsteroidal, anti-inflammatory medication) for pain, and was instructed to return to the clinic as needed. Dr. Vandel attests that Plaintiff did not complain again about his back until over two months later, when he signed up for sick call on March 10, 2008. Plaintiff indicated that he was suffering a pain of "four" on the pain management scale, and an examination by the Defendant MLP Garcia revealed limited range of motion due to pain but no gross deformities. Dr. Vendel attests that Garcia diagnosed Plaintiff with lumbago and gave him Prednisone (a steroid used for inflamation) and Zostix (a topical cream used for painful joints), as well as Tylenol for pain. Garcia also ordered another x-ray of Plaintiff's lumbar spine, which indicated he had mild scoliosis with no fracture.

Dr. Vendel attests that he saw Plaintiff again on May 9, 2008, and that during this examination Plaintiff complained of sciatic nerve pain to the left leg, although he indicated he was not experiencing any pain at that time. A neurological evaluation revealed sharp pulsating sciatic pain radiating to Plaintiff's left leg, and Dr. Vendel diagnosed Plaintiff with left sciatica and gave him Naproxen for pain. Dr. Vendel attests that he also submitted a consult for Plaintiff to have a MRI of the lumbar spine. Plaintiff's MRI was performed on June 2, 2008, and revealed a left eccentric annular fissure at L4/L5, and a disc extrusion of L5-S1 which abutted and posteriorly displaced the left S1 nerve root in the central canal. Dr. Vendel attests that, after he reviewed the results of this MRI, he submitted a referral for Plaintiff to be evaluated by the orthopedic surgeon.

Dr. Vendel attests that Plaintiff was evaluated by an orthopedic surgeon on August 18, 2008, who recommended an epidural steroid series. However, Plaintiff stated he did not want



- 6 -

to take any steroids because he had developed a rash the last time he took oral steroids for his back. The orthopedic surgeon then informed Plaintiff that his options were limited, and that he would refer Plaintiff to a spinal surgeon for a neurological consultation and possible surgical intervention. Dr. Vendel attests that he was thereafter out on extended sick leave prior to his official last day of October 2008, and was not involved in reviewing the recommendations made by the orthopedic surgeon, although it is his understanding that Plaintiff continued to be seen at FCI Estill regarding his back until he was transferred in May 2009.

In sum, Dr. Vendel attests that Plaintiff received appropriate medical care and treatment for his complaints, noting that within the first six months of complaining about his back, Plaintiff had two sets of x-rays taken, was provided oral steroids, anti-inflammatory topical cream, and other anti-inflammatory/pain medications, as well as having an MRI of his lumbar spine which resulted in a referral to see an orthopedic surgeon. Plaintiff then was seen by the orthopedic surgeon within two months after having the MRI, who recommended steroid injections, which Plaintiff rejected. See generally, Vendel Affidavit.

The Defendant David Garcia has submitted an affidavit wherein he attests that he is a mid level practitioner (MLP) at FCI Estill, and that he first saw the Plaintiff on March 10, 2008, in sick call where he was complaining of having a sciatic nerve problem and that his back was in pain. Garcia attests that his examination of the Plaintiff revealed that he had limited range of motion due to pain but no gross deformities, and he diagnosed Plaintiff with lumbago and gave him Prednisone and Zostix, as well as Tylenol. Garcia attests that he also ordered another x-ray of Plaintiff's lumbar spine which indicated he had mild scoliosis with no fracture.

Garcia attests that Plaintiff had an MRI of his lumbar spine on June 2, 2008, and that



after the results of the MRI were reviewed by Dr. Vendel, he was referred for evaluation by an orthopedic surgeon. Garcia attests that he also discussed the results of this MRI with the Plaintiff on August 15, 2008, and informed Plaintiff that an evaluation by the orthopedic surgeon was pending. Plaintiff was thereafter seen twice by the orthopedic surgeon.

Garcia attests that on November 14, 2008, he evaluated Plaintiff during his hypertension chronic care clinic appointment, and that Plaintiff stated he was doing well and taking his medications, although he was still experiencing back pain. Garcia attests that, during this visit, he did not make any changes to Plaintiff's treatment plan or medication regimen, and that he did not thereafter see Plaintiff again before Plaintiff transferred on May 12, 2009, although Plaintiff's medical records show that he continued to be monitored by medical staff for the pain associated with his back. See generally, Garcia Affidavit.

The Defendant R. Majauskas has submitted an affidavit wherein he attests that he was a staff physician at FCI Estill from June 2008 through January 2009. Dr. Majauskas attests that he made an administrative note in Plaintiff's medical records regarding his MRI results in August 22, 2008, and that he first saw the Plaintiff on August 8, 2008. Dr. Majauskas attests that he thoroughly evaluated Plaintiff and discussed the treatment options recommended by the orthopedic surgeon. Dr. Majauskas attests that, although Plaintiff was reluctant to try the epidural steroid injections, he was amenable to trying the injections after he [Dr. Majauskas] explained the difference between oral steroids and steroidal injections. Dr. Majauskas attests that he thereafter submitted a consult accordingly, and that he continued Plaintiff on Naproxin for pain, advised him to continue back exercises, and instructed him to sign up of sick call as needed, or follow up in three months. Dr. Majauskas attests that he also ordered a radiograph of Plaintiff's lumbar spine, which was negative

- 8 -



except for a minimal degenerative disc disease.

Dr. Majauskas attests that Plaintiff was evaluated by an orthopedic surgeon on November 3, 2008, and was assessed with degenerative disc disease. This specialist discussed with the Plaintiff the same two treatment options previously discussed with him in August 2008. On this occasion, Plaintiff indicated he was more amenable to taking epidural steroid treatment, and the surgeon recommended that he see a neurologist for evaluation to see if steroidal injections were necessary. Plaintiff was thereafter evaluated by a neurologist on December 18, 2008, who recommended Neurontin (used to treat neuropathic pain) and Flexeril (a muscle relaxer). This specialist noted that, if this medication did not work, Plaintiff should consider steroid epidural injections, while also recommending that surgical intervention be considered if conservative measures did not work. Dr. Majauskas attests that when the Plaintiff returned from the neurologist office, he was seen by medical staff and did not voice any complaints. He was also advised to contact medical if any assistance was needed.

Dr. Majauskas attests that on December 24, 2008 he reviewed the medication recommended by the neurologist and sought authorization for these medications, since neither medication was on the approved National Formulary Medication List. Dr. Majauskas attests that approval for these non-formulary medications was denied by the Regional Medical Director, since Plaintiff did not meet the non-formulary criteria for each of these medications. Dr. Majauskas thereafter performed a followed up evaluation on the Plaintiff on January 14, 2009, and explained to him at that time why the two non-formulary medications recommended by the neurologist had not been approved. Dr. Majauskas attests that he discussed Topimax with the Plaintiff, which is used as a pain management medication, and that Plaintiff indicated that he would try Topimax. Plaintiff



was then placed on the morning and evening pill line for Topimax, and continued on Naproxsen for pain. Plaintiff was also instructed to follow up in a month to increase the dosage if he was able to tolerate the medication.

Dr. Majauskas attests that his last day at FCI Estill was on or about January 30, 2009, although it is his understanding that Plaintiff continued to be seen at FCI Estill regarding his back until he was transferred in May 2009. See generally, Dr. Majauskas' Affidavit.

The Defendant M. L. Rivera has submitted an affidavit wherein he attests that he is the Warden at FCI Estill, that he is not familiar with the Plaintiff, and that it appears that he has been named as a Defendant simply because of his position as Warden of the institution. Rivera attests that he is not involved in the day to day decisions concerning the details of medical care provided to inmates, that he does not provide medical care for inmates, nor does he have a degree or any specialized training in the medical field. Rivera attests that all inmate medical matters are addressed by staff in the health services department, that he does not prescribe methods of care, nor does he determine when and if an inmate is in need of specialized care.

Rivera attests that, as Warden, he reviews and signs administrative remedies filed by inmates at FCI Estill, and that on September 9, 2008, Plaintiff filed an administrative remedy wherein he complained he had been told that his back problems were solved. Rivera attests that he signed a response on September 29, 2008, informing Plaintiff that he had an appointment with the orthopedic surgeon on August 18, 2008, and that the report was received at the institution on September 30, 2008. Rivera attests that he informed Plaintiff that he would be placed on "call-out" and that the provider would discuss the report with him. See generally, Rivera Affidavit.

In addition to these affidavits, the Defendants have also provided a copy of Plaintiff's



medical records (Defendants' Exhibits 3 and 4).

In a Reply filed March 8, 2010, Plaintiff has provided a computer printout from a website titled "Fedcure" which states that the Defendant Vendel was not licensed to practice medicine in the state of South Carolina. This document, which also discusses the medical history of a "Jeffrey Johnston", is signed by a "Karen S. Bond, J.D.".

As an attachment to his motion for summary judgment, Plaintiff has submitted an affidavit wherein he attests that he was housed at FCI Estill from May 8, 2007 until May 12, 2009, "when the injury occurred". Plaintiff attests that at his previous place of incarceration (FCI Seagoville) he received a lower bunk. See also, Exhibit A to Plaintiff's Affidavit [Medical Classification Status form dated February 18, 2005]. Plaintiff further attests that on or about December 18, 2007, he submitted a formal resolution form to his Unit team about pain he was experiencing, in which he asserted that he was not receiving proper medical treatment. See also, Exhibit B to Plaintiff's Affidavit [Informal Resolution form dated December 18, 2007]. Plaintiff has also submitted a copy of the results of his MRI on June 2, 2008. See Exhibit E to Plaintiff's Affidavit.[3] Plaintiff attests that the Defendants intentionally interfered with treatment that had been prescribed by a doctor, and that the referral to a spine surgeon for possible surgical intervention was never "done". Plaintiff attests that he filled out a sick call sign up sheet on April 2, 2009 because the medications he was receiving were causing shortness of breath. See also Exhibit F to Plaintiff's Affidavit. Plaintiff attests that had the Defendants honored his lower bunk status, his injury would

---

[3]Plaintiff incorrectly identifies this exhibit as "Exhibit C" in his Affidavit. Exhibit C is actually a copy of the examination statement from Dr. Garcia dated August 18, 2008. This was following a response to another informal resolution document submitted by the Plaintiff on August 6, 2008. See Exhibit D to Plaintiff's Affidavit.

- 11 -



not have gotten worse by forcing him onto the top bunk.  See generally, Plaintiff's Affidavit with attached Exhibits.

As an attachment to their response in opposition to the Plaintiff's motion for summary judgment, the Defendants have submitted an inmate history quarters printout showing that Plaintiff was assigned to an upper bunk only two nights while housed at FCI Estill, August 6-8, 2007.  This housing history also shows that FCI Estill placed Plaintiff in a lower bunk in a handicapped room from August 21, 2008 until he was transferred on May 12, 2009, and that Plaintiff currently has an upper bunk assignment in his present facility.  See Defendants' Response Memorandum, Attached Exhibit A.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here, after careful



review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

In order to proceed with his claim under Bivens[4] for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). While the evidence submitted to this Court certainly shows that Plaintiff was dissatisfied with the medical care he was receiving at FCI Estill, this evidence is not sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. To the contrary, the evidence includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his medical complaints. None of the information contained in this medical evidence supports Plaintiff's claims of constitutionally inadequate medical care, including the medical evidence in Plaintiff's own exhibits.

Further, while Plaintiff may have been assigned to a lower bunk in 2005; see Exhibit

---

[4] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Nevertheless, Harlow and progeny indicate that case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. Farmer v. Brennan, 511 U.S. 825 (1994). See also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir. 1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).



A to Plaintiff's Affidavit; no evidence has been submitted to the Court showing that this was a permanent requirement. In any event, to the extent Plaintiff is claiming that his bunk assignment while at FCI Estill exacerbated a pre-existing back condition, the Defendants have submitted evidence to show that Plaintiff was assigned to a lower bunk on all but two days during the year he was assigned to FCI Estill. Additionally, there is no record of Plaintiff even complaining to medical staff at FCI Estill of pain associated with his back until December 17, 2007, following which he was seen on numerous occasions, was prescribed medications, had x-rays taken as well as an MRI, and was seen by a specialist. The medical evidence further shows that Plaintiff declined the recommended treatment for his condition, while (contrary to Plaintiff's allegations) surgery was only mentioned as a last resort to be *considered* if more conservative treatment was unsuccessful.

Plaintiff's lay opinion as to what treatment he should have been receiving is not competent evidence to survive a properly supported motion for summary judgment; see Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a Bivens claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; and he has submitted no medical records or evidence from a medical expert sufficient to give rise to a genuine issue of fact as to whether the treatment he did receive was deficient for constitutional purposes. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to



'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-1189 (11th Cir. 1994)["An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"], overruled in part by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennen, 511 U.S. 825, 837 (1994). Therefore, his claim should be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 25, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

